UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLGER ISRAEL SILVA ANGAMARCA,<br>Petitioner,<br>v.<br>TONYA ANDREWS, *et al.*,<br>Respondents. | Case No. 1:26-cv-08354 (EJD)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 4 |

Petitioner Holger Israel Silva Angamarca is an immigration detainee proceeding with a petition for writ of habeas corpus filed under 28 U.S.C. § 2241 and motion for a temporary restraining order. *See* Dkt. Nos. 1, 4. Though both parties agree that Petitioner's detention is controlled by 8 U.S.C. § 1226(a), and that he received a bond hearing pursuant to that statute, Petitioner maintains that his continued detention violates due process. *See* Dkt. No. 1 at 5–6. For the reasons that follow, the Court GRANTS the petition and resolves the motion for a temporary restraining order as moot.

## I. BACKGROUND

Petitioner is a native of Ecuador who entered the United States in November 2016 pursuant to a C-1 non-immigrant visa. *Id*. at 6; Dkt. No. 11-1 at 2. His visa expired shortly after. Dkt. No. 11-2 at 2. Petitioner has continued to live in the United States for the past ten years. During that time, he has consistently paid taxes, started his own business in flooring installation, and purchased a home. Dkt. No. 1 at 5–6; Dkt. No. 10 at 0:01:48–0:09:21. He alleges that his parents are both lawful permanent residents and his sister is a U.S. citizen. Dkt. No. 1 at 6. In February 2024, his mother filed a Form I-130 Petition for Alien Relative on Petitioner's behalf. *Id*.; Dkt.

No. 11-1 at 3.

Petitioner was arrested by ICE in September 2026 "during a targeted enforcement operation[.]" Dkt. No. 11-1 at 2. Petitioner claims that he was driving to work at the time. Dkt. No. 1 at 5. Aside from this arrest by ICE, Respondents have not submitted any evidence, such as a RAP sheet, indicating that Petitioner has any criminal history.

A month later, Petitioner received a custody redetermination hearing before an Immigration Judge ("IJ") and was denied bond on a finding that Petitioner was a flight risk. *See* Dkt. No. 11-2 at 1. In support of his release, he submitted tax returns, letters of moral character, documents from a proposed sponsor, an I-130 receipt notice, and proof of property ownership. Dkt. No. 10 at 0:01:48–0:02:09. Petitioner's attorney also presented argument, explaining that Petitioner is a business owner, is well-respected by his clients, and has maintained multiple certifications relevant to his line of work. *Id*. at 0:03:07–0:05:53. She further explained that Petitioner initially entered the United States lawfully, has a path to permanent residence through his mother, has lived continuously in Washington since 2017, has a fixed address at a home which he owns, that his flooring business has been registered in Washington since 2018, and that he has consistently paid taxes while living in the United States. *Id*. at 0:05:54–0:09:21. DHS did not submit any documents or present argument.

The written order consists of a checked box next to the following text: "Denied, because Respondents has not met his burden with regards to flight." Dkt. No. 11-2 at 1. The hearing recording sheds additional light on the IJ's finding. After hearing counsel's presentation, she immediately denied bond explaining that:

> I am denying bond on flight. Respondent's not a danger, but I have significant flight concerns. I'm not minimizing that he's lived in the United States for almost a decade, but the key is almost. It means he's not going to be eligible statutorily for 42B. His LPR mom, father I-130, that's an F2B priority date …. He's going to have 245(c) issues. He's going to have priority date issues … On this record, I have significant concerns regarding flight. So I am denying bond on that basis.

*Id*. at 0:09:22–0:09:58. She did not cite to any other presented evidence, nor did she consider

whether bond or any alternatives to detention could minimize this flight risk.

Petitioner has now been detained for over one month. Neither party has provided the Court with information regarding the status of his removal proceedings, however, the EOIR docket states that his next hearing is set for December 10, 2026. As such, any removal proceedings remain pending and indefinite.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Respondents argue that Petitioner's detention under 8 U.S.C. § 1226(a) is constitutional, and that he must exhaust his administrative remedies by appealing his bond order to the Board of Immigration Appeals ("BIA") before seeking habeas relief. Dkt. No. 11 at 2–3. The Court first addresses exhaustion before turning to the merits.

### A. Exhaustion

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the

deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Assuming that the *Puga* factors favor exhaustion, waiver is appropriate. "Petitioner is challenging the constitutional adequacy of the bond hearing and the bond redetermination hearing." *Zhamagortsyan v. Warden, Adelanto ICE Processing Ctr.*, No. 5:26-CV-04093-DTB, 2026 WL 2876062, at *7 (C.D. Cal. Sept. 24, 2026) (waiving exhaustion requirement where IJ failed to correctly apply the relevant legal standard to the facts in denying bond); *see also Vasquez v. Warden, California City Immigration Processing Ctr.*, No. 1:26-CV-04482-DJC-SCR, 2026 WL 2676859, at *3 (E.D. Cal. Sept. 11, 2026), *report and recommendation adopted sub nom. Santibanez Vasquez v. Warden, California City Immigr. Processing Ctr.*, No. 1:26-CV-04482 DJC SCR, 2026 WL 2793606 (E.D. Cal. Sept. 17, 2026) (waiving exhaustion requirement where petition presented constitutional challenge to IJ's bond determination). Where the Petition presents constitutional due process concerns, there is "no reason to delay review in favor of allowing the BIA to possibly correct an error." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026). Therefore, Petitioner was not required to exhaust his administrative remedies before seeking habeas relief. *Poot v. Mullin*, No. 5:26-CV-3321-CTS, 2026 WL 2659590, at *5 (C.D. Cal. Sept. 9, 2026) (waiving exhaustion requirement where Petitioner presented constitutional challenge to IJ's flight risk determination).

**B. Due Process**

Courts review mixed questions of fact and law under an "abuse of discretion" standard where there are constitutional concerns with an IJ's bond determination. *Martinez v. Clark*, 124

F.4th 775, 785 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id.* (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] ... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)).

"To determine whether [a noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez*, 124 F.4th at 783 (citing *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)). "The nine factors an IJ 'may' consider 'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." *Id*. Further, for a Petitioner's detention to be justified by reason of flight risk, there must be some consideration of whether any bond amount or alternative release conditions could ensure his appearance at future immigration proceedings. *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017).

Here, the IJ abused her discretion in denying Petitioner's release for two reasons. First, based on the recording of Petitioner's custody redetermination hearing, the IJ only considered one of the nine *Matter of Guerra* factors, specifically factor three: "the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future[.]" *Martinez*, 124 F.4th at 783. Indeed, the only fact the IJ considered relevant

was that, in her view, Petitioner was "not going to be eligible statutorily for 42B" cancellation of removal. Dkt. No 10 at 0:09:34–0:09:37. The IJ abused her discretion by relying exclusively on her assessment that Petitioner's application for immigration relief was speculative, without considering any other factors. As another court in this district has opined:

> IJs misapply the relevant legal standard when their flight risk determination relies solely on the procedural posture and predicted outcomes of a noncitizen's pending immigration proceedings, because even if the IJ's predictions about the likelihood that a noncitizen will obtain the relief he is seeking are correct, the real question is whether the noncitizen poses a flight risk that cannot be mitigated.

*Henry A.V.L. v. Warden of the Central Valley Annex Detention Facility*, et al., No. 1:26-CV-03354-MWJS, 2026 WL 1999944, at *3 (E.D. Cal. July 10, 2026) (internal quotation omitted).

Second, it was an error for the IJ to find that Petitioner was such a serious flight risk that no amount of bond was appropriate "without 'engag[ing] in any meaningful analysis of potential alternatives to detention, such as a GPS ankle monitor, home detention, enrollment in the Intensive Supervision Appearance Program ("ISAP"), or other reporting requirements as part of the flight risk calculus.'" *Heboud v. Blanche*, No. 5:26-CV-03484-KS, 2026 WL 2494985, at *6 (C.D. Cal. Aug. 24, 2026) (quoting *Alvarez Felix v. United States Dep't of Just.*, No. 2:26-CV-03304-HDV-AYP, 2026 WL 1719418, at *3 (C.D. Cal. June 10, 2026)). "If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of those alternatives) is excessive in relation to those interests[.]" *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1088 (N.D. Cal. 2024). Where "no serious consideration was given to alternatives to detention, a necessary component of the due process analysis in the context of bond determinations[,]" an IJ abuses its discretion. *Alvarez Felix*, 2026 WL 1719418, at *2.

For these reasons, the IJ abused his discretion in finding that Petitioner was a flight risk, which no amount of bond or alternatives to detention could mitigate. Accordingly, Petitioner is entitled to relief on his due process challenge.

**C. Remedy**

"Upon determining that an IJ provided a petitioner with a legally or constitutionally

inadequate bond hearing, district courts have either ordered petitioner's immediate release [ ] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases). Here, Petitioner has requested that Respondents "release him unless, within 14 days, an IJ holds a new custody redetermination at which the IJ: determines whether any bond amount or condition of release … would reasonably assure Petitioner's appearance," and "weighs all relevant factors on the record, including the evidence of his residence, property, business, tax history, family, sponsor, and lack of criminal record." Dkt. No. 12 at 9–10. Respondents further concede that "[i]f the Court believes additional process is warranted, the appropriate, narrow remedy is an order directing a new custody redetermination[.]" Dkt. No. 11 at 3. Under these circumstances, the appropriate remedy is a further bond hearing.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the petition for writ of habeas corpus is GRANTED. Respondents are ENJOINED AND RESTRAINED from continuing to detain Petitioner unless they demonstrate, within fourteen days of the date of this order, that Petitioner has received a renewed bond hearing at which the IJ must consider alternatives to detention, including but not limited to a reasonable bond amount. Any bond determination should take into consideration Petitioner's ability to pay. The IJ must also consider all evidence presented by Petitioner.

The Clerk of Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: October 29, 2026

EDWARD J. DAVILA
United States District Judge